UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RAMIRO L. M.,[1] | Case No. 2:25-cv-04023-JDE |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| FRANK BISIGNANO,[2] Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Ramiro L. M. ("Plaintiff") filed a Complaint on May 5, 2025, seeking review of the denial of his application for Supplemental Security Income ("SSI"). The Court has reviewed Plaintiff's opening brief (Dkt. 17), the Commissioner's answering brief (Dkt. 18), and the Administrative Record (Dkt. 9 "AR"). The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted under Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Leland Dudek as the defendant.

## I.

## BACKGROUND

Plaintiff filed an application for SSI on August 22, 2019, alleging disability commencing June 20, 2003. AR 19, 155-64. After Plaintiff's application was denied initially and on reconsideration (AR 93, 100), an Administrative Law Judge ("ALJ") held a telephone hearing on February 4, 2021. AR 36-69. Plaintiff, unrepresented by counsel, and a vocational expert ("VE") testified at the hearing (AR 50, 62). On July 27, 2021, the ALJ issued a decision concluding Plaintiff was not disabled. AR 19-28. The Appeals Council denied review on September 8, 2022. AR 1-7.

On November 9, 2022, Plaintiff filed a Complaint in the District Court challenging the ALJ's decision denying SSI. AR 1264-66. After a stipulation by the parties, the District Court issued an order of remand for further administrative proceedings. AR 1269-70. The Appeals Council then vacated the ALJ's decision and remanded for further proceedings. AR 1280-82.

An ALJ held a telephonic hearing on April 9, 2024, at which Plaintiff, represented by counsel, appeared and testified, as did a VE. AR 1180-1206. On May 21, 2024, the ALJ concluded that Plaintiff was not disabled and declined to reopen a prior application. AR 1161. The ALJ found Plaintiff had not engaged in substantial gainful activity since August 22, 2019, the application date. AR 1163. The ALJ determined Plaintiff suffered from the following severe impairments: status post left clavicle open reduction internal fixation with residual partial thickness supraspinatus and subscapularis tendon tearing with degeneration of the superior labrum, multilevel neural foramina narrowing and stenosis of the lumbar spine with evidence of nerve root involvement, status post L4-5 laminectomy, a disc protrusion with neural foramina narrowing and degenerative changes at C5-6, degenerative changes of the thoracic spine, status post anterior communicating artery aneurysm status post clip ligation and coil

embolization, with multiple subsequent diagnostic and obesity. Id. The ALJ
determined Plaintiff did not have an impairment or combination of
impairments that meets or medically equals a listed impairment. AR 1164. The
ALJ found Plaintiff had residual functional capacity ("RFC") to perform a
range of light work,[3] limited to:

> [L]ift[ing] and carry[ing] up to 20 pounds occasionally, 10 pounds
> frequently, sitting for 6 hours during an 8-hour workday, standing and/or
> walking for 6 hours, except [Plaintiff] can only stand, walk or sit for one hour at
> a time and thereafter will need to change positions for 1 to 2 minutes before
> returning to sitting, standing or walking. Further, [Plaintiff] requires a cane for
> ambulating 20 feet or more. [Plaintiff] can never climb ropes, ladders or
> scaffolds, but can occasionally balance, stoop, crouch, kneel, crawl and climb
> ramps and stairs. [Plaintiff] can only occasionally push and pull with his left
> upper extremity, operate foot controls or operate a motor vehicle. [Plaintiff]
> may engage in no overhead reaching and only occasional reaching in all other
> directions, as well as occasional handling, fingering and feeling with the left
> upper extremity. [Plaintiff] has no other significant limitations except he is
> precluded from exposure to hazards and uneven terrain.

AR 1165. The ALJ found Plaintiff had no past relevant work, but in view
of his age, education, work experience, RFC, and the VE's testimony, there

---

[3] "Light work" is defined as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds. Even though the weight
> lifted may be very little, a job is in this category when it requires a good
> deal of walking or standing, or when it involves sitting most of the time
> with some pushing and pulling of arm or leg controls. To be considered
> capable of performing a full or wide range of light work, [a claimant]
> must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b); see also Aide R. v. Saul, 2020 WL 7773896, *2 n.6 (C.D.
Cal. Dec. 30, 2020).

were jobs that existed in significant numbers in the national economy that he could have performed, including the representative occupations of toll collector, cashier II, and office helper. AR 1170-71. Therefore, the ALJ concluded that Plaintiff had not been under a disability since August 22, 2019, the date the application was filed. AR 1171-72. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the agency's final decision. AR 1151-57.

## II.

## LEGAL STANDARDS

### A.   Standard of Review

Under 42 U.S.C. § 405(g), this Court may review a decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To assess whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated

4

in Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021). Lastly, even if an ALJ errs, the decision will be affirmed if the error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted); Smith, 14 F.4th at 1111 (even where the "modest burden" of the substantial evidence standard is not met, "we will not reverse an ALJ's decision where the error was harmless").

**B.    The Five-Step Sequential Evaluation**

When a claim reaches an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers if the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to assess whether the claimant's impairments render the claimant disabled because they meet or equal any of the listed impairments in the Social Security Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). After assessing the RFC, the ALJ proceeds to the fourth step to determine if, in light of the claimant's RFC, the claimant can perform past relevant work as actually or generally

5

performed. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999); 20 C.F.R. §§ 404.1566(a), 416.966(a). A claimant who can do other work is not disabled; a claimant who cannot do other work and meets the duration requirement is disabled. See Tackett, 180 F.3d at 1099; see also Woods v. Kijakazi, 32 F.4th 785, 788 n.1 (9th Cir. 2022) (summarizing the steps and noting that "[t]he recent [2017] changes to the Social Security regulations did not affect the familiar 'five-step sequential evaluation process.'").

The claimant generally bears the burden at steps one through four to show he is disabled or meets the requirements to proceed to the next step and bears the ultimate burden to show he is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a limited burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.

## DISCUSSION

Plaintiff raises one issue (Dkt. 17 at 18-25): Whether the ALJ's RFC determination is the product of legal error as the ALJ failed to properly evaluate the medical opinion evidence. Plaintiff asserts that the ALJ erred in assessing his RFC because the ALJ failed to properly evaluate the medical opinion of the physical consultative examiner, Jerry Chuang, M.D.

### 1. **Applicable Law**

In formulating an RFC, the "ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds, 807 F.3d at 1006. An ALJ must consider all the relevant evidence in making an RFC determination, including medical source evidence. See 20 C.F.R. § 416.945(a)(3). An ALJ's RFC determination, however, need not precisely reflect any particular physician's assessment. See id.; see also Mills v. Comm'r of Soc. Sec., 2014 WL 4195012, *4 n.8 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source."). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

For claims filed on or after March 27, 2017, such as Plaintiff's claim here, the ALJ is not required to give deference to any medical opinion, including treating source opinions. See 20 C.F.R. § 416.920c(a); Woods, 32 F.4th at 792. Instead, the ALJ evaluates the persuasiveness of medical opinions based on several factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examinations, purpose of treatment, extent of treatment, whether the medical source examined the claimant); (4) the medical source's specialty; and (5) other factors. See 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors are supportability and consistency. See 20 C.F.R. § 416.920c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" Woods, 32 F.4th at 791-792 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other

7

medical sources and nonmedical sources in the claim.'" <u>Woods</u>, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). Under these regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." <u>Woods</u>, 32 F.4th at 792.

    2. Pertinent Facts

    In December 2023, Dr. Chuang completed an orthopedic consultative examination of Plaintiff and prepared a medical statement of ability to do work-related physical activities. AR 2043-47. Dr. Chuang observed Plaintiff presented with lumbosacral radiculopathy with sacrum tenderness causing moderate weakness in the lower back and mild weakness in bilateral lower extremities with numbness in both feet, cervical radiculopathy causing weakness in the left arm and left hand, left shoulder degenerative joint disease with impingement syndrome, and degenerative joint disease in both hips. AR 2047. Dr. Chuang assessed Plaintiff with functional limitations, including: lifting and carrying 20 pounds occasionally and 10 pounds frequently, occasional pushing and pulling with the left upper extremity (no limitation in the right upper extremity), standing and walking six hours in an eight-hour day, sitting six hours in an eight-hour day, needing a straight cane for support for long-distance walking, occasional bending, crouching, stooping, and crawling, occasional use of the left hand for fine and gross manipulations (no limitation in the right hand), and no walking on uneven terrain, climbing ladders, or working at heights. <u>Id.</u> Dr. Chuang also found Plaintiff could sit, stand, and walk one hour at a time without interruption, ambulate 20 feet without a cane, occasionally handle, finger, feel, push and pull with the left hand, frequently operate foot controls, occasionally be exposed to moving mechanical parts and operation of a motor vehicle, and occasionally reach (non-overhead) with the left hand, but no reaching overhead with the left hand. AR 2049-51.

The ALJ found Dr. Chuang's opinion "generally persuasive," noting that his assessment was "largely consistent with and supported by the medical evidence." AR 1165. The ALJ included the limitations assessed by Dr. Chuang in the RFC assessment. Id. As the ALJ also found Plaintiff's "testimony to be persuasive to a certain extent," the ALJ stated that "additional limitations pertaining to changing positions, … sitting, standing and walking for no more than one hour at a time, reaching, [exposure to] hazards, and … use of a cane," were included in the RFC. Id. Although the ALJ stated that neither the evaluating medical consultants nor Dr. Chuang "support[ed] these limitations," these "additional limitations" were consistent with Dr. Chuang's opinion, as noted above. AR 2049-51.

## 2. Analysis

### a) Dr. Chuang's Opinion

Plaintiff argues that his RFC determination is not supported by substantial evidence because the ALJ's analysis of Dr. Chuang's opinion was "conclusory" and lacked "meaningful consideration of the consistency and supportability of the opinion." Dkt. 17 at 22. The Court disagrees.

First, the Court notes that Plaintiff makes contradictory arguments regarding Dr. Chuang's opinion. Plaintiff asserts that the ALJ "credited the opinion of Dr. Chuang and the limitations assessed therein" and improperly "rejected" Dr. Chuang's opinion. Dkt. 17 at 21. As noted above, the ALJ accepted the limitations assessed by Dr. Chuang and incorporated them into the RFC. AR 1165. Thus, Plaintiff's argument that the ALJ erroneously "rejected" Dr. Chuang's opinion lacks merit.

Second, although the ALJ's discussion of the persuasiveness of Dr. Chuang's opinion may have been somewhat brief, the ALJ adequately considered the consistency and supportability factors, as required by the

9

regulations. AR 1164-67. In discussing the severity of Plaintiff's impairments, the ALJ noted that the non-examining medical consultants, treating sources, and Dr. Chuang agreed that Plaintiff's impairments more than minimally affected his ability to perform work-related activities. AR 1164. The ALJ explained that these medical opinions were persuasive, to extent they were "consistent with[] and well supported" by the medical evidence." Id. The ALJ further noted that while Dr. Chuang observed degenerative changes in Plaintiff's hips, the treatment records did not establish that Plaintiff's hip impairment was severe. AR 1164, 2046. As for the supportability factor, the ALJ found Dr. Chuang's examination findings were consistent with Plaintiff's assessed limitations. AR 1166-67. Dr. Chuang observed that Plaintiff used a cane for long distance walking and had an antalgic gait, loss of sensation in L5-S1 distribution, tenderness, reduced range of motion, positive straight-leg raising test, signs of impingement in the left shoulder, weakness in the left hand, and numbness in his feet. AR 1166-67, 2045. Given these findings, Plaintiff has not shown that the ALJ erred in evaluating the persuasiveness of Dr. Chuang's opinion or the RFC assessment is unsupported by substantial evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm the ALJ's determination of [the claimant's] RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence.").

### b) Step Five

Plaintiff further contends the ALJ erred in finding he could perform work that exists in significant numbers in the economy, arguing that two of the jobs the VE identified, cashier II (Dictionary of Occupational Titles ("DOT") 211.462-010) and office helper (DOT 239.567-010), require "frequent fine and gross manipulation," which conflicts with his limitation to "occasional fine

10

and gross manipulation," and that the remaining toll collector job does not exist in significant numbers in the national economy. Dkt. 17 at 24-25.

An ALJ properly relies on a VE's "testimony regarding the number of relevant jobs in the national economy." Bayliss, 427 F.3d at 1218 ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE."). "A VE's recognized expertise provides the necessary foundation for his or her testimony." Id. However, a reviewing court should "weigh both the evidence that supports and the evidence that detracts from the ALJ's factual conclusions." Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523 (9th Cir. 2014).

At the hearing, the ALJ presented a hypothetical to the VE based on Plaintiff's RFC, including limitation to occasional handling and fingering with the left upper extremity. AR 1196-97, 1200. The VE testified that a person with Plaintiff's RFC would be able to perform work as a cashier II, office helper, and toll collector. AR 1197-1200. Given the limitations in the hypothetical, however, the VE testified that the number of cashier II and office helper jobs would be eroded by 95 percent, resulting in roughly 23,000[4] cashier II jobs and 7,000[5] office helper jobs. AR 1199-1200. The VE also testified that there were 5,100 collector jobs available nationally. AR 1199-1200.

Plaintiff has failed to establish that he is precluded from performing work as a cashier II or office helper. First, Plaintiff overstates his limitations. The ALJ found Plaintiff was limited to occasional handling and fingering with the left upper extremity. AR 1165. No right upper extremity limitations were

---

[4] The VE testified about 460,000 cashier II jobs exist in the national economy, but reduced that number to 23,000 based on limitations in the hypothetical. AR 1199.

[5] The ALJ inaccurately found that the VE testified there were 70,000 office helper jobs available in the national economy that a person with Plaintiff's limitations could perform. AR 1171.

11

assessed. AR 1165, 2047. Second, while the DOT's job descriptions of the
cashier II and office helper jobs indicate that frequent handling and fingering
would be required, the VE explained that her testimony did not conflict with
the DOT because the DOT does not address limitations in the use of just one
upper extremity, as opposed limitations in both upper extremities. AR 1201.
Moreover, the VE accounted for Plaintiff's limitations, including the handling
and fingering limitations, by finding that 95 percent of the available cashier II
and office helper would be eroded and the remaining five percent of the jobs in
those occupations would allow for the limitations included in Plaintiff's RFC.
AR 1199-1200. Thus, the VE properly relied on her professional experience and
education in identifying occupations that a person with Plaintiff's limitations
could perform. AR 1201-02; see SSR 00-4p (explaining that a VE may be able
to provide more specific information than the DOT regarding the range of
requirements of a particular job); Coleman v. Colvin, 2014 WL 4080007, at *4
(C.D. Cal. Aug.18, 2014) (declining to find an apparent conflict "when the
DOT is silent about a particular mental or physical requirement"); Rodriguez v.
Astrue, 2008 WL 2561961, at *2-3 (C.D. Cal. June 25, 2008) ("Because the
nature of the particular reaching action required in the performance of the jobs
at issue is not specified in the DOT, the ALJ properly relied on the vocational
expert's testimony that Plaintiff could perform the jobs in question despite the
limitations on his reaching.").

Plaintiff further argues that "national job numbers lower than 25,000 are
typically deemed not significant." Dkt. 17 at 25. But, the Ninth Circuit has
"never set out a bright-line rule for what constitutes a 'significant number' of
jobs." Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). The burden of
showing that work exists in "significant numbers" lies with the Commissioner.
Tackett, 180 F.3d at 1099. The Ninth Circuit has found that 25,000 nationwide
jobs constitute a significant number but considered this number to be a "close

call." <u>Gutierrez</u>, 740 F.3d at 528-29. Cases looking at numbers less than 25,000 vary somewhat widely on how many jobs need to exist to be considered "significant." <u>See, e.g.</u>, <u>Baker v. Comm'r of Soc. Sec.</u>, 2014 WL 3615497, at *8 (E.D. Cal. July 21, 2014) (14,500 national jobs not significant); <u>Valencia v. Astrue</u>, 2013 WL 1209353 at *18 (N.D. Cal. Mar. 25, 2013) (14,082 national jobs not significant); <u>Lora M. v. Comm'r of Soc. Sec.</u>, 2019 WL 2130303, at *4 (8,500 national jobs not significant); <u>Aguilar v. Colvin</u>, 2016 WL 3660296 (C.D. Cal. July 8, 2016) (11,850 national jobs and 1,080 regional jobs significant); <u>Evans v. Colvin</u>, 2014 WL 3845046, at *2-3 (C.D. Cal. Aug. 4, 2014) (6,200 national jobs significant); <u>Montalbo v. Colvin</u>, 231 F. Supp. 3d 846, 863 (D. Haw. 2017) (12,300 national jobs significant in light of discretion afforded ALJ in determining whether number of jobs available is significant). Here, the VE testified that 23,000 cashier II jobs could be performed by a person with Plaintiff's limitations. AR 1199-1200. In light of the range of jobs found to be significant in other cases, the Court declines to find the ALJ erred in concluding that Plaintiff was able to make a successful adjustment to other work that exists in significant numbers in the national economy.[6]

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: January 13, 2026

_____
JOHN D. EARLY
United States Magistrate Judge

---

[6] Considering the aggregate number of cashier II (23,000), office helper (7,000), and toll collector (5,100) jobs in the national economy that a person with Plaintiff's RFC could perform, this case does not involve a "close call" as to whether the number of available jobs was significant. <u>Gutierrez</u>, 740 F.3d at 528-29.